## VOLUME 56,

AND

# New York State Reporter,

## VOLUME 90.

---

(26 Misc. Rep. 306.)

### SULLIVAN COUNTY CLUB v. BUTLER.

(Supreme Court, Trial Term, New York County. February 15, 1899.)

1. CORPORATIONS—STOCK—ASSESSMENT.
  Where stock is fully paid for in advance, it cannot be assessed, in the absence of provision therefor in the statute under which the corporation was organized, unless the stockholder has made himself liable therefor by contract.

2. SAME—AGREEMENT—CERTIFICATE.
  A provision, in a certificate of full-paid stock, that it is "nonassessable beyond $100 per annum," is not an assent to such an assessment, in any manner not authorized by law, without the stockholder's assent.

3. SAME—RECEIPT.
  A provision, in a receipt for full-paid stock, that the party receipting for it holds it pursuant to the by-laws of the corporation as to dues and transfers, does not make the stock subject to assessment under a by-law therefor passed before signing of the receipt, but after he had contracted for full-paid stock, and paid therefor, the receipt being signed as of the date of the payment for the stock.

4. SAME—PROOF AS TO SUBSCRIPTION.
  Where stock is subject to assessment, it is necessary, in order to charge an individual subscriber with an assessment against his stock, to prove that the whole capital stock has been subscribed for, so that the assessment may reach all alike, or that he has waived his right to insist thereon.

Action by the Sullivan County Club against Charles Henry Butler to collect an assessment imposed on stock owned by defendant in plaintiff corporation. Judgment for defendant.

Isaac L. Miller, for plaintiff.
T. Edward Wyckoff, for defendant.

56 N.Y.S.—1

McADAM, J.   The plaintiff was organized under the business cor-
poration act (Laws 1890, c. 567).   The objects and nature of the busi-
ness for which it was formed, according to the certificate of incorpora-
tion, were "to purchase, acquire, develop, improve and sell real estate
in Sullivan county, and to build, maintain and sell buildings or real
estate in said county"; and the business was to be carried on in the
city of New York, and the towns of Thompson and Mamakating, in
Sullivan county, N. Y.   The stock of the corporation consisted of
$100,000, divided into 1,000 shares of $100 each, and the directors for
the first year were named.   Nothing in the certificate of incorporation
provided for or gave any powers to the directors, incorporators, or
stockholders beyond those given by the enabling act.   On January 4,
1893, the plaintiff purchased from the defendant and Marcia F. Butler
a large tract of land in Sullivan county for the purposes of the cor-
poration, under the following resolution:

"That this company purchase from Charles Henry Butler and Marcia F.
Butler all their property situated in great lots Nos. 11 and 12 in the towns
of Thompson and Mamakating, Sullivan county, New York, consisting of
between 4,000 and 5,000 acres, and to pay therefor $50,000, in 500 full-paid
shares of the capital stock of the company, and that the secretary or his
assistant be authorized to deliver to Charles Henry Butler certificates for 500
of such full-paid shares, together with all the privileges that such shares
shall carry."

It will be noted that the certificates to be issued to the defendant
under this resolution were to be of "full-paid" shares of stock.   The
present action is founded on a by-law adopted by the board of directors
of the plaintiff May 16, 1893, in the following words:

"Art. 10. The board of directors shall have power to establish such rules,
regulations and restrictions for the government of the club, and the use of
the property, and dues not to exceed $10 per share, and may provide for
such penalties for any violation thereof not inconsistent with the laws of
this state, as it may deem expedient."

And on another adopted by the stockholders January 14, 1895, as
follows:

"Art. 16. The annual dues shall be paid by the board of directors upon
each share from year to year, but shall in no case exceed the sum of $10 per
share per year, payable in advance, on the 1st day of March in each year;
and the board of directors are authorized to assess the stock to that extent."

As the statute under which the plaintiff was incorporated does not
in terms authorize the levy of an assessment on full-paid stock, the
question arises as to the power of the corporation to assess such stock.
"Attempts have been made in various ways to authorize the assess-
ment of stockholders for amounts after the par value of their stock
has been paid in.   Such efforts have generally failed.   It cannot be
done by a majority vote of the stockholders, nor of the directors, nor
by a by-law."   1 Cook, Stock, Stockh. & Corp. Law (3d Ed.) § 242;
Thomp. Liab. Stockh. § 4.   It is thus apparent that the club, apart
from any contractual obligation on the part of the defendant, had
no power to levy the assessments in question.   The plaintiff claims
that there was such a contractual obligation, and it is alleged in the
complaint, and not denied in the answer, "that the certificate or cer-
tificates of stock so delivered by plaintiff to defendant contained on

the face thereof the following words: 'Shares, $100 each. Full-paid, and nonassessable beyond $10 per annum.'" The plaintiff contends that this created, by implication, at least, an assent on the part of the defendant that his stock might be assessed to the extent of $10 a share. This statement on the stock certificates does not amount to an assent on the part of the defendant that his stock be assessed to the extent of 10 per cent., in any manner not authorized by law, without his consent. The plaintiff urges that such assent found expression in the by-law to which attention has been called; but this by-law was not in existence when Butler conveyed his property to the plaintiff, and agreed to accept "full-paid" stock as consideration money therefor. The by-law was enacted by the directors of the plaintiff, and it nowhere appears that the defendant, the stockholder most seriously affected by it, ever acquiesced in its passage, or in any manner assented to the imposition of any such assessment upon his stock. The defendant's stock came to him under his contract made before the adoption of the by-law, and, unless he in some legal manner waived his rights under his contract, he was entitled to hold his security as "full-paid, unassessable stock"; for a by-law impairing the vested rights of a stockholder is in the nature of ex post facto legislation, and unauthorized. Pulford v. Fire Department, 31 Mich. 458; People v. Crockett, 9 Cal. 112; Kent v. Mining Co., 78 N. Y. 159; 1 Cook, Stock, Stockh. & Corp. Law (3d Ed.) § 242; Mor. Priv. Corp. (2d Ed.) § 496. To hold that a by-law imposing an annual assessment on stock already fully paid for is a lawful exercise of corporate power is tantamount to holding that a corporation may, by a single resolve in the form of a by-law, put its stockholders in debt to it annually to any amount that it may see fit to specify, and all without their consent. To state such a proposition is simply to refute its legality. If the defendant had purchased his stock after the adoption of the by-law, and with knowledge of the same, it might have been urged with reason that the by-law had become part of the contract of purchase, because made with reference to it.

Plaintiff also urges that because, on May 19, 1893, the defendant signed a receipt for a certificate of 500 shares of stock, in which it is therein stated that he holds the same "pursuant to the by-law of the Sullivan County Club as to dues and transfers," he bound himself to the obligations contained in the by-law of May 16, 1893. But this receipt was signed as of January 4, 1893, the date of the deed, and had reference to the contract for "full-paid" stock under which it was delivered. This ingenious receipt cannot be construed as modifying or impairing the defendant's rights under his contract, which had been fully performed on his part. No one would suspect from that receipt that the defendant, after giving up all he contracted to give, was expected to waive any of the rights which his contract gave him. If such was the purpose, it never accomplished the design. There was clearly no contractual agreement to pay the assessments sought to be enforced. The rights and obligations of the parties had been carefully specified in the written contract of sale and purchase, and it is elementary that a contract will be implied only where there is no express contract. Story, Cont. § 15. The effort to fasten upon the de-

fendant an obligation by implication, when none arises upon his express contract, must, in the nature of things, fail. There is no element of equitable estoppel in the case, and no new consideration, such as the law requires as the basis of a new or modified agreement. Among the corporations authorized to be formed by general laws will be found some in which the capital consists largely of what are called "capital stock notes," which are assessable by the corporation from time to time to meet accruing liabilities, until the full amount of such notes is paid. 2 Rev. St. (9th Ed.) p. 1179, § 116. And there are others in which stock is issued on paying an installment only of the purchase price, subject to call or assessment by the corporation, in like manner, until the stock is fully paid for. 1 Cook, Stock, Stockh. & Corp. Law (3d Ed.) § 104 et seq. In those cases the authority to assess is exercised to compel the stockholder to make good his contractual obligation to the corporation, that it may liquidate its liabilities. Such cases must not be confused with the one at bar; for, when stock is fully paid for in advance, the holder has already discharged every obligation he owes in respect thereto, and cannot, upon any principle of justice, be required to pay more, unless by some new and valid contract he has made himself liable to do so.

Another objection urged by the defendant, and not without force, is that the capital stock of the plaintiff consisted of 1,000 shares, at the par value of $100 each, and 240 shares are unissued and undisposed of, and that this stock should be assessable equally with his own. The rule undoubtedly is that, even in corporations where stock is legally subject to assessment, it is necessary, in order to charge an individual subscriber with the amount of an assessment levied against his stock, to prove affirmatively that the whole capital stock of the corporation has been subscribed for, so that the assessment may reach all alike, or that such subscriber has by some act of his waived the right to insist upon the performance of this condition precedent. Bray v. Farwell, 81 N. Y. 600; Temple v. Lemon, 112 Ill. 51. No such waiver has been established here.

Upon the entire case, there must be judgment for the defendant.

