(December 6, 1902.)

## CORCORAN v. SONORA MINING AND MILLING COMPANY.

### [71 Pac. 127.]

WHEN AN ORDER SUSTAINING A DEMURRER MAY BE REVIEWED.—The right to have an order sustaining a demurrer reviewed in this court is not waived by filing an amended complaint.

WHEN ORDER ON MOTION TO STRIKE OUT PORTIONS OF AMENDED COMPLAINT MAY BE REVIEWED.—An order of the trial court sustaining a motion to strike out certain portions of an amended complaint may be reviewed in this court on final appeal, and is not waived by filing a subsequent amendment.

WHEN ORAL EVIDENCE IS NOT ADMISSIBLE TO PROVE RECORD OF CORPORATION.—Oral evidence is not admissible to prove the records of a corporation in a suit brought to set aside a sale of stock of a stockholder for nonpayment of assessments.

WHEN STATUTE STRICTLY CONSTRUED.—Every requirement of the statute relating to the proceedings must be strictly followed.

(Syllabus by the court.)

APPEAL from District Court, Shoshone County.

The facts are fully stated in the opinion.

W. W. Woods and A. G. Kerns, for Appellant.

The court erred in sustaining the demurrer to the original complaint. The complaint alleged the corporate existence of the defendant. The court sustained a general demurrer to the complaint on the ground that it did not continue and allege that one-fourth of the capital stock of defendant had been subscribed, as provided in section 2614 of the Revised Statutes. The appellant maintains that this allegation was not legally required of him; that it was a matter of defense. To reach the insufficient part the demurrer should go to the complaint on the ground of ambiguity or uncertainty in respect to insufficient part. (*Dangel v. Levy*, 1 Idaho, 722; *Fairchilds v. Ada County*, 6 Idaho, 340, 55 Pac. 654.) The court erred in striking out portions of the amended and supplemental complaint. It is a well-settled principle of law that a corporation will not be permitted to plead *ultra vires* where it has received a benefit under a contract. (5 Thompson on Corporations, secs. 5833, 6007, 6016; 7 Thompson on Corporations, sec. 8321; 2 Thompson on Corporations, sec. 1770.) "Whenever a corporation is acting within the scope of the legitimate purposes of its institution, all parol contracts, made by its authorized agents, are express promises of the corporation; and all duties imposed upon them by law, and all benefits conferred at their request, raise implied promises, for the enforcement of which an action will lie." (*Bank of Columbia v. Patterson*, 7 Cranch (U. S.), 299, 306.) Section 2614 provides when an assessment can be levied; section 2617, what the order levying an assessment must contain; and section 2639, that the order levying the assessment must be recorded in the minute-book or journal. When a statute requires a particular transaction to be entered in a minute-book or journal by a corporation, parol testimony is not admissible to prove the transaction. (4 Thompson on Corporations, sec. 5175; *Hill v. City of Cleve-*

*land,* 4 Ohio Dec. 562; 6 Thompson on Corporations, sec. 7735.)
An assessment is an obligation created by statute. Observation
of the mode of making an assessment upon and sale of stock
must comply strictly with the statute. A sale made without
strictly following the statute is just as invalid as if made with-
out any power at all. (Clark on Corporations, p. 320; *San
Bernardino Inv. Co. v. Merrill,* 108 Cal. 490, 41 Pac. 487; *Clise
Inv. Co. v. Washington Sav. Bank,* 18 Wash. 8, 50 Pac. 575;
1 Morawetz on Private Corporations, 122 et seq., 201; Boone on
Corporations, 119; Cook on Corporations, 129, 130.)

C. W. Beale, for Respondents.

Error, if any, in sustaining a demurrer to a complaint is
waived by the filing of an amended complaint. (*Brittan v.
Oakland Bank of Savings,* 112 Cal. 1, 44 Pac. 339; *Bank of
Santa Fe v. Haskell County Bank,* 54 Kan. 375, 38 Pac. 485;
*Anthony v. Slayden,* 27 Colo. 144, 60 Pac. 826.) There can
be no nonassessable stock under the laws of this state. When
one-fourth of the capital stock has been subscribed, assessment
may be levied and collected for the purpose of paying expenses,
conducting business, or paying debts of the corporation.
(Thompson on Corporations, sec. 8661; *Santa Cruz R. Co. v.
Spreckels,* 65 Cal. 193, 3 Pac. 661, 802; *Sparks v. Lower Payette
Ditch Co.,* 3 Idaho, 306, 29 Pac. 134; *Hall v. Eagle Rock etc.
Water Co.,* 5 Idaho, 551, 51 Pac. 110.) That parol evidence
is admissible to prove facts omitted from the record is not
only the rule laid down by the supreme court of California,
which has the same statute upon this subject that we have, but
is also supported by the supreme court of the United States, and
the practice of admitting and receiving such testimony is uni-
versally indorsed by the highest courts in this country. (*Gor-
don v. City of San Diego,* 108 Cal. 264, 41 Pac. 301; *Bay
View Assn. v. Williams,* 50 Cal. 353; *Gilson Quartz M. Co. v.
Gilson,* 51 Cal. 341; *Bank of United States v. Danbridge,* 12
Wheat. 64; *Allis v. Jones,* 45 Fed. 148; *United States v.
Danbridge,* 12 Wheat. 74.)

STOCKSLAGER, J.—The plaintiff commenced his action in the district court of Shoshone county to set aside the sale of eight thousand shares of the stock of the Sonora Mining and Milling Company, alleged to have been sold to appellant by the officers of said corporation, and thereafter sold to respondent Gibbs for certain alleged assessments due. A demurrer was interposed and sustained to the complaint. An amended complaint was filed, and a motion sustained to strike out certain portions thereof. A second amended complaint was filed, which alleged the corporate existence of the respondent the Sonora Mining and Milling Company under and by virtue of the laws of the state of Idaho, and that it has, or claims to have, a capital stock of $1,000,000 divided into one million shares, of one dollar each, and that at the time of its incorporation the incorporators thereof set forth and declared that all of said stock was fully subscribed; that on or about the thirteenth day of June, 1899, George Steward, A. F. Gill, W. G. Chapman, D. Cardoner, H. J. Rossi, and W. C. Clark, members of the board of directors of defendant corporation, pretended to hold a meeting of the board of directors of said corporation, at which pretended meeting plaintiff is informed and believes the following proceedings were had and recorded, to wit: "After discussing the financial condition of the company, a resolution was offered that an assessment of one mill per share on the outstanding stock of the company was levied, the same to become delinquent on July 15, 1899, and the delinquent stock to be sold on August 15, 1899. The vote upon the proposed assessment was as follows: Ayes, Steward, Gill, Chapman, Cardoner, Rossi, Clark—6. Absent, Moffatt—1." Plaintiff alleges, on information and belief, that the pretended meeting of the board of directors was not duly assembled on said day, in that all the members of said board were not present, and no notice of such meeting had been given, and no provision had been made by said company for calling such or any meeting. On information and belief, plaintiff alleges that the pretended levy of an assessment at said pretended meeting was not a uniform and equal assessment on all of the capital stock of defend-

ant; that an attempt was made at said pretended meeting to delegate the power and authority to levy and collect such pretended assessment to officers of said defendant corporation, and no provision was made specifying when, to whom, and where such assessment was payable, nor the paper in which notice of any assessment should be published, nor fix the amount thereof, and that no notice of such pretended levy of an assessment was given; that thereafter, and on or about the fifteenth day of August, 1899, defendant corporation wrongfully and without right, or the plaintiff's consent or knowledge, unlawfully pretended to sell eight thousand of the twelve thousand shares of the capital stock of said defendant corporation belonging to plaintiff to one C. W. Gibbs, for the alleged sum of fourteen dollars and sixty cents; that he had no notice of the pretended acts and doings of the defendant corporation in pretending to levy an assessment against his said stock, and that he had no knowledge or notice that his said stock was being sold as aforesaid, or otherwise; that prior to the commencement of this action the plaintiff tendered to the defendant corporation and to said C. W. Gibbs the sum of twenty-five dollars, being more than the amount of the pretended price of said stock, together with all subsequent assessments which had or have been levied or paid or due thereon, together with interest thereon, and all costs and other moneys due and payable, and that said tender has been and was refused by each of said defendants; that at the time of said tender said C. W. Gibbs denied that he was the purchaser of said stock; that at the time of making said tender, the twentieth day of December, 1899, he had no knowledge as to the amount for which his said stock was sold, and had no means of ascertaining the fact; that the defendant corporation refused to allow plaintiff to inspect its books, records, and papers for the purpose of ascertaining such amount, or for any purpose, and that at the time of the commencement of this action the plaintiff deposited in the court twenty-five dollars for the use and benefit of defendant corporation, or the purchaser of said stock, or either of them, for the purpose of making his tender good, and that the said sum now remains de-

posited in court for the purpose aforesaid; that he is still a stockholder of defendant corporation, and that the officers of defendant corporation have at all times and now do refuse to allow him to inspect the stock and transfer books of said corporation, as well as other papers, and records of said corporation, and the agreement between the incorporators of said company, hereinbefore referred to, by which the treasury stock of said company was created. Upon information and belief, plaintiff alleges that no notice whatever was given of the sale of his stock as aforesaid on the fifteenth day of August, 1899, and for this reason the pretended sale was void; that defendant Gibbs still claims to be the owner of said eight thousand shares of stock belonging to plaintiff; that defendant Gibbs was not made an original party defendant to this action for the reason that he denied having become the purchaser of said eight thousand shares of stock, the title of which was involved in this action, and that the real purchaser was not known and could not be ascertained by plaintiff until an order was made by the court in this suit requiring the defendant corporation to disclose the name of such purchaser. Then follows prayer for judgment setting aside the pretended sale of the eight thousand shares so belonging to the plaintiff to said Gibbs, and said sale adjudged to be void; that plaintiff be adjudged to be the owner of said stock, and that it be restored to his possession, and for other equitable relief, etc.

The defendants answered, denying all the allegations of the complaint, with the exception of the allegation that defendant the Sonora Mining and Milling Company was a corporation. The answer avers that on the thirteenth day of June, 1899, and long prior thereto, George Steward, A. F. Gill, W. G. Chapman, D. Cardoner, H. J. Rossi, W. C. Clark, and John F. Moffatt were the duly elected, qualified and acting board of directors of said defendant corporation; that on said thirteenth day of June, 1899, said board duly assembled at the office of Herrington & Rossi, in the city of Wallace, all being present, excepting John F. Moffatt; that said meeting had been duly and regularly called by an order of the president; that at such

time more than one-fourth of the capital stock of the corporation had been subscribed; that the corporation had no funds in its treasury with which to pay running expenses; that at said meeting the board of directors made and passed an order and resolution levying an assessment of one-tenth of one cent per share upon the capital stock of said corporation; that by said order and resolution it was specifically specified when said assessment should be payable, and to whom and where payable; that notice of the delinquent stock was published in the "Wallace Press" and "Idaho State Tribune," weekly papers published in the city of Wallace; that same publications were once a week for five successive weeks; that said assessment covered the twelve thousand shares of stock mentioned in the complaint; that the day fixed as the time when the assessment remaining unpaid became delinquent was July 15, 1899; that neither plaintiff, nor anyone in his behalf, paid his assessment prior to July 15, 1899, or on said day, or any other time; that said assessment on his said stock was twelve dollars; that by reason of such failure to pay the assessment said stock became delinquent, and the secretary of the company caused to be published in the same newspapers heretofore referred to a notice of such delinquency, etc.; that at the time of the sale of said stock C. W. Gibbs offered to pay the assessment and costs for the smallest number of shares, to wit, eight thousand of plaintiff's stock, and was the highest bidder for the same; that thereafter said stock purchased by said Gibbs was transferred to him on the stock-books of the company on the payment of said assessment; that in all things pertaining to the calling of said board of directors, the meeting of said board of directors, the order for said meeting of said board, the conduct of said board in the levying of said assessment, in the noticing of said assessment and in the noticing of said sale, and in the conduct of sale, said corporation, by and through its authorized officers, acted in all matters and things connected therewith under the provisions of the statute, in strict compliance with every requirement and provision thereof.

On the eleventh day of October, 1901, a trial was had before the court—a jury having been waived—and on the twenty-sixth day of October, 1901, findings of fact and conclusions of law were filed with the clerk. On 'the same day a judgment was entered in favor of the defendants for their costs. On the eighth day of February, 1902, a bill of exceptions was settled and allowed by the court. This appeal is from the judgment.

Appellant assigns fourteen errors occurring at the trial, and in the rendition of judgment in favor of respondents. The first and second are based upon the ruling of the court sustaining the demurrer to the original complaint, and a motion to strike out certain portions of the amended complaint, and will be considered together. The first paragraph of the complaint alleges the corporate existence of the defendant corporation under and by virtue of the laws of the state of Idaho. Counsel for respondents file a general demurrer, which was sustained by the court, seemingly on the ground that the complaint failed to allege that one-fourth of the capital stock had been subscribed, as provided for in section 2614. This section says: "The directors of any corporation formed, or existing under the laws of this territory, after one-fourth of its capital stock has been subscribed may, for the purpose of paying expenses, conducting business or paying debts, levy and collect assessments upon the subscribed capital stock thereof in the manner and form and to the extent herein provided." We do not think this demurrer should have been sustained. The plaintiff was complaining that his stock, or a portion of it, had been wrongfully sold by defendant corporation, and it devolved upon the corporation to show that it had complied with this section of our statutes before it attempted to assess and sell the stock of any stockholder of the corporation; hence a matter of defense. It is urged by counsel for defendants that, even if the demurrer was wrongfully sustained, the plaintiff waived any error committed by the trial court when he filed his amended complaint. He cites a number of authorities in support of this contention, to wit: *Brittan v. Bank*, 112 Cal. 1, 44 Pac. 339; *Bank of Santa Fe v. Haskell Co. Bank*, 54 Kan. 375, 38 Pac. 485; *Anthony*

*v. Slayden,* 27 Colo. 144, 60 Pac. 826. It is true that these authorities support him in his contention. The first one is based upon the statutes of California; the second one, upon the statutes of Kansas; and the third one, upon the statutes of Colorado. Section 4427 of our statutes relative to appeals from an order overruling or sustaining a demurrer is as follows: "The verdict of the jury, the final decision in an action or proceeding, an interlocutory order or decision, finally determining the rights of the parties, or some of them; an order or decision made upon a contested motion, an order or decision from which an appeal may be taken; an order sustaining or overruling a demurrer, allowing or refusing to allow an amendment to a pleading, striking out a pleading or a portion thereof, refusing a continuance; an order made upon *ex parte* application, and an order or decision made in the absence of a party, are deemed to have been excepted to, and such exception to the verdict of a jury, to the final decision of an action or proceeding, to an order or decision finally determining the rights of the parties or any of them, to an order sustaining or overruling a demurrer, or to any other order or decision included within the terms of this section, where such order or decision and the papers upon which it is made are a part of the records and files in the action, need not, unless desired by the party objecting thereto, be embodied in a bill of exceptions, but the same, appearing in the record or files, may be reviewed upon appeal as though settled in such bill of exceptions." In *Palmer v. Pettingill,* 6 Idaho, 346, 55 Pac. 653, this court construed this section. The syllabus says: "Under the provisions of section 4427 of the Revised Statutes of 1887, an order overruling or sustaining a demurrer need not be embodied in a bill of exceptions, to be reviewed on appeal. If the same appears in the records or files, it may be reviewed on appeal as though settled in a bill of exceptions." We think this a correct construction of the section of the statute above referred to. Under the provisions of this section of the statute, the rights of litigants are preserved, and all alleged errors preserved by that section may be reviewed on the final appeal. The same rule applies to the

motion to strike out certain portions of plaintiff's amended complaint. This motion was sustained by the court, and it is urged that, by filing another amended complaint, plaintiff waived any errors that may have been committed by the trial court. We cannot agree with this contention. The plaintiff, by filing an amended complaint, did not waive any error committed by the trial court in sustaining the demurrer and motion to strike out portions of the complaint.

Assignments 3, 4, 5, 6, 7, 8, 9, 11, 12, and 13 are based upon appellant's objection to the introduction of parol testimony to prove a forfeiture of stock in a corporation. They were all argued together, and, we think, may be disposed of by us in like manner. Section 2614 of our statutes provides: "The directors of any corporation formed or existing under the laws of this territory [state] after one-fourth of its capital stock has been subscribed may, for the purpose of paying expenses, conducting business or paying debts, levy and collect assessments upon the subscribed capital stock thereof in the manner and form and to the extent herein provided." Section 2617 provides: "The order levying the assessment must specify the amount thereof, when, to whom and where payable; fix the day subsequent to the full term of publication of the assessment notice on which the unpaid assessment will be delinquent, not less than thirty or more than sixty days from the time of making the order levying the assessment, and a day for the sale of delinquent stock not less than fifteen nor more than sixty days from the day the stock is declared delinquent." Section 2639 declares that: "All corporations for profit are required to keep a record of all their transactions, a journal of all meetings of their directors, members or stockholders, with the time and place of holding the same, whether regular or special, and if special, its object, how authorized, and the notice thereof given. The record must embrace every act done or ordered to be done; who were present, and who absent, and, if requested, by any director, member or stockholder, the time must be noted when he entered the meeting or obtained leave of absence therefrom. On a similar request the ayes and noes must be taken on any prop-

osition, and a record thereof made.   On similar request the protest of any director, member or stockholder to any action or proposed action must be entered in full.   All records to be open; to the inspection of any director, member, stockholder or creditor of the corporation." It will be observed that the last section requires all proceedings to be recorded in a journal to be kept by the officers of the corporation; and, if they fail to do so, can the corporation prove by parol evidence facts that should be shown in the journal?   In this case it is shown that the corporation sought to levy an assessment on the stock of appellant, and thereafter declared a forfeiture and sale of eight thousand shares of this stock in the corporation.   All the authorities to which our attention has been called hold, not only a substantial, but a strict, compliance with the statute must be had, or the sale is void.   In *Clise Inv. Co. v. Washington Sav. Bank,* 18 Wash. 8, 50 Pac. 575, a well-considered case from Washington, that court holds, after quoting the statute: "This section, it will be perceived, provides for forfeiture and sale of the stock for delinquent assessments, but in such cases the authorities all seem to hold that the power to sell must be exercised strictly in accordance with the mode prescribed by the statute," and cites Thompson on Corporations, sec. 1766, and cases cited; *Budd v. Railway Co.,* 15 Or. 413, 3 Am. St. Rep. 169, 15 Pac. 659.   Morawetz says: "In many instances, however, it has been provided in charters and general incorporation laws that the shares of a stockholder may be declared forfeited and sold for nonpayment of assessments.   A power of this character must be construed strictly, and the validity of a forfeiture and sale of the shares of a member depends upon a strict compliance with the formalities prescribed." (1 Morawetz on Private Corporations, 2d ed., secs. 122, 123.   See, also, sec. 201, and Boone on Corporations, 119.)   2 Thompson on Corporations, section 1766, says: "Another principle is that, where this power is conferred by a statute which at the same time points out the mode in which it shall be exercised, it can only be exercised in the mode so pointed out.   Thus, if the statute which confers the power prescribes that it shall be exercised

by a by-law, the company cannot exercise it until it has made a by-law; and this must affirmatively appear in order to show the validity of the exercise of the power. The principle that forfeitures are not favored in the law justifies the conclusion that the power of a corporation to forfeit the shares of its members for nonpayment of assessments must be pursued with great strictness." 1 Cook on Corporations, fourth edition, section 129, says: "The general method of forfeiting shares for nonpayment of calls is usually prescribed in detail by the statute authorizing the forfeiture. In the earlier cases there may be observed some tendency to hold that a substantial, in distinction from a strict, compliance with the requirements of the statute, is all that is necessary to a valid forfeiture. But in later cases, English and American, it is plainly disclosed, and it may be taken as a settled rule that the validity of the forfeiture and sale of the shares of a subscriber in arrears depends upon a strict and formal compliance with the requirements of the enabling statute."

W. C. Clark, the secretary of the defendant corporation, was called as a witness on behalf of the defendant, and testified to matters material that did not appear in the journal of the proceedings of the corporation. To this evidence the plaintiff objected, the objection was overruled, and the witness was permitted to answer. If the authorities we have referred to and quoted from correctly state the rule, this was error. If the corporation was seeking to escape a liability by a deficient record, or if it was an attempt to protect its property from an attempt of someone to get wrongful possession of it, then the rule would, perhaps, be different, and they would be permitted to show the facts by oral evidence. In the case at bar the record shows that it was an attempt on the part of the corporation to levy an assessment upon, and thereafter dispose of, the stock of one of the stockholders of the corporation. In cases of this character the law requires that every requirement of the statute must be strictly followed.

W. C. Clark, the secretary of the corporation, was a witness for defendants, and, over the objection of plaintiff, was per-

mitted to state the object and purpose of a meeting of the board of directors. Among other things, he says: "The board of directors, by unanimous vote of all those present, voted in favor of the resolution. I did not incorporate that resolution, word for word, into the record. I did not know it was necessary. I noted the fact in the record that such a resolution (outlining and giving some of the salient points) was introduced and passed. That is the resolution referred to in that record." H. J. Rossi, the treasurer of the corporation, was a witness for defendants, and, over the objection of plaintiff, testified as to the contents of a resolution. He says the resolution was presented at said meeting, and all of the directors present voted in favor of it. This resolution provided for the assessment of the stock. Under the plain provisions of our statute, corporations cannot prove an assessment in this way.

In order to levy an assessment and sell the stock of a stockholder of a corporation in this state, every requirement of the statute must be followed. The record discloses that such was not done in this case, and the judgment must be reversed, and cause remanded for further proceedings consistent with the view expressed in this opinion. Costs awarded to appellant.

Quarles, C. J., and Sullivan, J., concur.

### ON REHEARING.

Per CURIAM.—The interesting petition for a rehearing filed by respondents has been carefully considered. Respondents insist that a rehearing should be granted upon the ground that appellant did not make and keep good a tender to the respondents, as required by section 2630 of the Revised Statutes. This question was not raised at the hearing, and, upon the record as presented to this court, we think it was waived, and intended to be waived, so far as this appeal is concerned; hence a rehearing should not be granted on this ground.

As to the second point urged in the petition, we think that the erroneous sustaining of the demurrer to the original complaint, requiring the appellant to plead matters which it was unnecessary to plead, while not of itself sufficient to authorize a re-

·versal of the judgment, yet, as other errors require a reversal, this court should pass upon the action of the court in sustaining such demurrer.

The trial court permitted respondents to introduce parol evidence to show that necessary steps, under the statute, had been taken by the respondent corporation in the matter of the assessment and sale of the stock in question. The statute requiring the corporation to keep a record of its proceedings intends that the substance of all of its proceedings should appear of record. In case of the levy of an assessment by a corporation, and proceedings to sell stock on account of delinquency in paying such assessment, the proceeding is a special, summary one, by which citizens are deprived of their property; and, in order to make the sale valid, all of the requirements of the statute must be substantially complied with. The principle enunciated in this case is one relating to the proceedings on the part of the corporation whereby assessments are levied, and the stock of the stockholders sought to be sold thereunder. Inasmuch as boards of directors act by resolution, and the statute requires them to keep a record of their proceedings, we do not see how it can well be contended that a resolution levying an assessment need not be recorded in the record-book of the corporation; and we do not think that a mere recital of the fact that such assessment was levied—a conclusion of fact—can be held to answer the requirements of the statute.

A rehearing is denied.